RAYMOND SYNDICATE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20180.   Promulgated December 10, 1930.

*Herbert B. Ehrmann, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the respondent.

602

OPINION.

SMITH: The only question in issue in this proceeding is whether the petitioner is entitled to special assessment for the years 1920 and 1921 under the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921. Section 327 of the Revenue Act of 1918 provides in part:

That in the following cases the tax shall be determined as provided in section 328:

\*     \*     \*     \*     \*     \*     \*

(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively;

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

Section 327 of the Revenue Act of 1921 is to the like effect.

The petitioner claims that there was an abnormality in its invested capital in both the years 1920 and 1921 by reason of the fact that (1) the $200,000 of invested capital beginning in 1916 does not take into account the value of the intangibles of the predecessor corporation; and (2) that a very valuable good will was built up during the years 1916 to 1919, inclusive, by advertising, which was not reflected in the invested capital if computed under the provisions of the taxing act.

Witnesses for the petitioner testified as to the value of the good will of the predecessor corporation on January 1, 1916. In the opinion of some of these witnesses, the good will had a value equal to the value of the inventory, although one of these witnesses testified that he did not know the value of the inventory. His estimate was based largely upon the proposition that the Raymond store was well known in Boston and in New England through the slogans that had been used for many years and that people, especially working people, resorted to the store for bargains.

Even if the good will of the predecessor corporation had a large value at the time Dorr and his associates purchased the stock of the Maine corporation in April, 1916, we are not persuaded that the value of all of the assets purchased was in excess of the price paid therefor by Dorr and his associates. There was apparently no element of gift from the former owner of the corporation to Dorr and his associates. The earnings of the corporation over a period of years prior to 1916 are not impressive. The earnings for 1915 under the advertising sponsored by Dorr were much larger than in any preceding year. But the evidence does not warrant a finding that the total value of the assets of the Maine corporation was in excess of $200,000, the amount paid for all of the capital stock of that corporation by Dorr and his associates in April, 1916. The corporation appears to have been doing a profitable business early in 1916. It was contemplated by Dorr and his associates upon the purchase of this stock that a Massachusetts corporation would immediately be organized and the assets of the Maine corporation would be paid into it for the capital stock of that corporation. We can not find that there was any increase in the good will of the Maine corporation from April to August, 1916. The Massachusetts corporation was organized with a capital stock of $200,000 and the record does not warrant a finding of fact that the value of the assets of the Maine corporation paid in to the petitioner in exchange for its capital stock was substantially in excess of $200,000. We are of the opinion, therefore, that there was no such abnormality in invested capital in 1916 as would warrant a finding that the assets paid in to the petitioner corporation in exchange for its shares of stock were worth more than the par value of the stock, and we are of the opinion that special assessment for 1920 and 1921 is not warranted upon that ground.

The second contention of the petitioner is that a good will of great value was built up during the years 1916 to 1919, inclusive, which was in no wise reflected in the invested capital of the petitioner for the years 1920 and 1921. Competent witnesses testified as to the value of the good will which had been built up by the large expenditures for advertising during the years 1916 to 1919. It is to be noted, however, that all of the payments for the advertising were treated as expenses upon the petitioner's books of account. In no case were they capitalized. The advertising was for the sale of merchandise then on the petitioner's shelves. Even though a good will resulted from that advertising, we think that that did not create an abnormality in the invested capital. Many stores which conduct large advertising campaigns create a valuable good will which, under the provisions of the taxing statute, will not ordinarily be reflected

in the invested capital determined under the provisions of the taxing acts. There is, however, nothing abnormal in this fact. A condition that is common to many corporations does not create such an abnormality in invested capital as warrants the application of special assessment for the purpose of determining tax liability.

The facts in this case appear to be simply that the petitioner through unique advertising had large profits in the years 1920 and 1921. The provision of the statue is that section 327(d)—

* * * shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital * * *.

If there was any abnormality in the invested capital, it is such as results from the normal application of the statute. In our opinion it was not the intention of Congress that the special assessment provision should have application to such a case as is presented herein.

*Judgment will be entered for the respondent.*